UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS W. KASCH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Cause No. 3:05-CV-575 RM |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Thomas W. Kasch seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq.*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). For the reasons that follow, the court vacates the Commissioner's decision and remands the case.

Mr. Kasch first applied for benefits in January 2001. His applications were denied at the administrative level, and no appeal was taken. He reapplied for benefits under Title II and XVI in October 2002, contending that his condition had deteriorated and that his back pain, bilateral hand arthritis, right knee impairments, and seizure disorder rendered him unable to work as of July 20,

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been automatically substituted as the named defendant, pursuant to Fed. R Civ. P. 25(d)(1).

2002.[2] When those applications were denied, Mr. Linson requested a hearing before an administrative law judge (ALJ). A hearing was conducted on April 16, 2004, at which Mr. Kasch and vocational expert Michael Blankenship testified.

When the Appeals Council denied Mr. Kasch's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. 20 C.F.R. §§ 404.955, 404.981, 416.1455, and 416.1481; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

Mr. Kasch challenges the ALJ's assessment of his residual functional capacity. He contends that the ALJ failed to accord proper weight to the opinions offered by his treating physician, Dr. Aroutiounova, and did not properly evaluate his subjective complaints of pain and the limitations it imposes on his activities. He asks the court to reverse the Commissioner's decision and remand the case.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). The court must sustain the ALJ's findings as long as they are supported by substantial evidence. 42 U.S.C. 405(g); Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." Young

---

[2] The onset date alleged in Mr. Kasch's applications was November 28, 2000. He later amended that date to July 20, 2002, the day after the earlier administrative hearing decision.

2

v. Barnhart, 362 F.3d at 1001. The court cannot substitute its judgment for that of the ALJ by reweighing the evidence, resolving factual conflicts in the record, or reconsidering credibility determinations that are not patently wrong. Young v. Barnhart, 362 F.3d at 1001; Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

BACKGROUND

*A. The Medical Evidence*

In April 2002, Dr. Jeffrey Granger reported that Mr. Kasch had right knee anterior cruciate ligament and medial meniscus deficiencies with surgery. Right knee x-rays showed surgical residuals with hardware in place. The x-rays documented significant medial joint space loss. Dr. Granger opined that Mr. Kasch needed a right knee replacement.

In May 2002, Dr. Carl J. Sartourius reported that diagnostic imaging studies had revealed multiple levels of bulging discs and bone spurs in the lumbar spine. Dr. Sartorius concluded that Mr. Kasch has lumbar degenerative disc disease, but was not a candidate for surgery.

Dr. P. Budzenski conducted a consultative examination on November 14, 2002. He noted that Mr. Kasch walked with a mildly antalgic gait and had to wear a right knee brace, but could get on and off the examination table without difficulty. He found no evidence for rheumatoid nodules, ulnar deviation, or tophi, but noted capsular thickening and periaticular swelling in the

3

metacarpophalangeal joints (MCPJ) of the right index finger and right long finger. Dr. Budzenski found the severity to be "moderate to marked." There was no muscle atrophy in the hands, and his grip strength was normal, although he was unable to flex his right thumb at the distal interphalangeal joint. Based on these findings, Dr. Budzenski opined that Mr. Kasch should be able to work eight hours a day in a seated, standing or ambulatory position. He could not be expected to ambulate more than thirty minutes out of every hour, but could stand in one place continuously. Mr. Kasch had full use of his upper bilateral extremities in terms of grasping, pushing, pulling or manipulating, and could bend continually and squat occasionally, but couldn't crawl, climb, or work around unprotected heights.

Dr. Granger examined Mr. Kasch again in February 2003, and reported "[t]hickening and whitening about the 3rd MCPJ" and "thickening about the index and 3rd MCPJs on the left." X-rays from January 2003 showed "narrowing of the right index and 3rd MCPJ with osteophytes consistent with advanced DJD [degenerative joint disease]" and a "[s]imilar arthritic change about the left 3rd MCPJ." Dr. Granger opined that Mr. Kasch's back pain also was due to degenerative joint disease. Dr. Granger referred Mr. Kasch to Dr. Robert Baltera, a hand surgeon.

Dr. Baltera examined Mr. Kasch in February 2003. He noted that Mr. Kasch had "evidence of osteoarthritis about the MP [metacarpophalangeal] joint of the right index and middle finger and left middle finger with osteophyte formation in

4

these areas." Dr. Baltera characterized the arthritis in Mr. Kasch's right hand as "severe." X-rays of his hands and wrists revealed "STT [scapho-trapezio-trapezoidal] joint arthritis bilaterally." Because Dr. Baltera felt Mr. Kasch was "quite young" to be having problems with osteoarthritis, he referred him to Dr. Inna Aroutiounova, a rheumatologist.

When Dr. Aroutiounova examined Mr. Kasch in October 2003, she found he had prominent synovial proliferation over the MCPs on the right hand including the first through the fifth MCPs. In his left hand, there was bony enlargement of the first MP joint without evidence of synovitis. The second and third proximal interphalangeal joints of the left hand also were enlarged through bony proliferation. Both wrists had very mild synovial proliferation but no signs of active synovitis.[3] Mr. Kasch's right knee had prominent bony hypertrophy with effusion and slight tenderness over the medial lining of the right knee joint.

Dr. Aroutiounova reported in December 2003 that Mr. Kasch had advanced osteoarthritis of the hands and that his condition was unchanged. She recommended that he begin swimming twice a week, use Naproxen cream, and participate in physical therapy to increase the grip in his right hand.

Dr. Granger examined Mr. Kasch in April 2004 and found "thickening and nodularity especially about the 3rd MCPJ and painful limited range of motion of about 0°-60°." Dr. Granger stated that Mr. Kasch would always be restricted to do

---

[3] Synovitis is the inflammation of joint-lining membranes.

5

no heavy or repetitive activity with his right hand, even if he had joint replacement surgery.

Dr. Aroutiounova completed a physical capacities evaluation for Mr. Kasch in April 2004, in which she opined that Mr. Kasch could lift five pounds frequently and six to ten pounds occasionally; could carry five pounds occasionally; and could not grasp, push and pull arm controls, or make fine manipulations with his right hand. Dr. Aroutiounova indicated that Mr. Kasch could use his left hand for repetitive simple grasping, but could not use it for repetitive pushing or pulling of arm controls or for fine manipulation. Dr. Aroutiounova indicated that Mr. Kasch could stand and/or walk for one hour at a time and for a total of four to five hours in an eight-hour work day. He could sit for a total of three hours and could bend or squat occasionally, but could not crawl, climb, or reach.

### B. Evidence Elicited at the Hearing

Mr. Kasch testified at the hearing before the ALJ. He was forty-four years old. He has a high school diploma. Mr. Kasch described having sharp pains in his back if he stood or sat for very long or tried to lift things. He wears a brace on his left knee because it has a tendency to "pop out of joint." He indicated he needs knee replacement surgery, but is too young to have one based on the life of replacement parts. Mr. Kasch complained of pain and swelling in both hands, but especially his right hand. He testified that he could hold a cup of coffee, write a short note, and drive short distances. He no longer paints because he cannot hold

the brushes. He finds it hard to button his shirt or zip his pants. He can pick up coins with his right hand. He felt he could lift up to ten pounds, but couldn't lift five pounds frequently. His daily activities include reading and watching television. He does exercises for his back and is "up and down all day" to keep stiffness from developing in his leg and back.

The only other testimony at the hearing came from Michael Blankenship, a vocational expert. Mr. Blankenship testified that Mr. Kasch would be unable to do any of his past relevant work, which included work as a janitor, construction worker, saw operator at a factory, car trimmer, and stock person at a grocery store–all of which required medium to heavy exertion. Mr. Blakenship testified that a person limited to sedentary work, who needed to alternate between sitting and standing, could not do repeated forceful gripping with the right hand, and could do no more than occasional bending, squatting, kneeling, stooping, crawling, or twisting, would be able to work in surveillance or as a cashier. Mr. Blankenship said a person with those restrictions could also work as an information clerk, rate clerk, records clerk, or interviewer if he were able to do some typing or writing. Without the ability to use either hand repetitively, only 117 surveillance jobs would be available.

Using the standard sequential five-step evaluation outlined in 20 C.F.R. § 404.1520 and 416.920, the ALJ found that Mr. Kasch had not performed substantial gainful activity since his alleged onset; that he had a combination of severe impairments, including degenerative disease of the right knee, right

7

anterior cruciate ligament insufficiency, lumbar degenerative disease, and bilateral hand degenerative disease; but that none of his impairments, singularly or in combination, met or medically equaled the severity requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpt. P., Regulations No. 4. The ALJ found that while Mr. Kasch could no longer perform his past relevant work, he retained the residual functional capacity to perform sedentary work with some limitations and could perform a significant number of other jobs which were available in the region, including surveillance worker, information clerk, cost/rate clerk, and records clerk. Accordingly, the ALJ concluded that Mr. Kasch was not disabled within the meaning of the Act and was not entitled to disability insurance benefits or eligible for supplemental security income.

## DISCUSSION

### A. The Treating Physician's Rule

Residual functional capacity is an assessment of the work-related activities a claimant is able to perform despite the limitations imposed by an impairment or combination of impairments. Young v. Barnhart, 362 F3d at 1000; 20 C.F.R. 404.1545(a)(1). Although final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner, 20 C.F.R. § 404.1527(3) and Social Security Ruling 96-5p, the ALJ may not substitute his own medical opinions or reject medical evidence without giving adequate reasons for doing so. Kangail v. Barnhart, 454 F.3d 627, 629 (7th

8

Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000). A treating physician's medical opinion should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

> Obviously if it is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obviously, once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight.

Hofslein v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).

The ALJ concluded that Mr. Kasch's abilities to stand and walk had been significantly compromised, that he was restricted to performing sedentary lifting and carrying activities, and that he must be allowed to alternate sitting and standing at will for five minutes each hour without leaving the work station. The ALJ also found that Mr. Kasch could perform no more than occasional squatting, kneeling, stooping, bending, crawling, and twisting; and could not perform repetitive, forceful gripping with the right hand. Neither the bases for those findings nor the extent to which the ALJ credited the statements of Mr. Kasch's treating physicians, is clear from the record.

In her April 27, 2004 evaluation of Mr. Kasch's physical capacities, Dr. Aroutiounova indicated that Mr. Kasch could lift five pounds frequently and six to ten pounds occasionally; but could only occasionally carry five pounds and could never carry anything over five pounds. She stated that Mr. Kasch could not

9

use his right hand for any repetitive action, and could use his left hand for simple repetitive grasping, but not for repetitive pushing and pulling of arm controls or for repetitive fine manipulation.

The ALJ addressed the evaluation in his decision, but incorrectly identified it as Dr. Granger's. The ALJ found that:

> Dr. Granger's assessment seems to be an overstatement of the case. There are few clinical findings associated with the claimant's left had. The claimant has normal grip strength and no muscle atrophy. The claimant seems capable of carrying ten pounds with his left hand alone, at least occasionally. There is no objectively valid medical reason for thinking that he cannot. It is perhaps true that the doctor meant that the claimant could not carry more than five pounds with the right hand. The claimant has reported that he could do all routine activities of daily living. This evidences an ability to grasp with both hands, push, pull, and engage in fine manipulation. Further, Dr. Granger's statements to the contrary are contradicted by the clinical findings. Thus, Dr. Granger's opinion is not fully probative and is discounted to a certain extent herein.

The error may have been inadvertent, as the Commissioner suggests, but it was not harmless. Dr. Aroutiounova was a treating physician, specializing in the areas of rheumatology. Her opinions were material to Mr. Kasch's claim of disability, and were entitled to controlling weight if they were consistent with the other substantial evidence and were supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ concluded that clinical findings contradicted the findings with respect to Mr. Kasch's ability to repetitively grasp, push, pull and engage in fine manipulation with both hands, but he cited only one such finding: an agency consulting physician's report that Mr. Kasch had normal grip strength and no muscle atrophy. That finding, though, was made in

10

November 2002—almost two years before Dr. Aroutiounova completed her functional capacity assessment—and the ALJ found that Dr. Budzenski's assessment was not fully probative because he had not had an opportunity to review the most recently submitted medical evidence. The ALJ noted that Mr. Kasch was treated by both Dr. Granger and Dr. Aroutiounova, but didn't identify any discrepancies or inconsistencies in their opinions or in any other medical opinion, and made no findings with respect to the reports that Dr. Granger actually wrote. Indeed, Dr. Aroutiounova's findings appear to be not only internally consistent, but consistent with findings made by Dr. Granger and Dr. Baltera.

*B. Credibility Determination*

The ALJ credited some, but not all, of Mr. Kasch's testimony. The ALJ found that:

> Evaluation pursuant to Social Security Ruling 96-7p and the implementing Regulations at 20 CFR 404.1529 and 416.926 indicates that the evidence on the record as a whole does not support the claimant's subjective complaints to the extent alleged. ... The claimant's abilities to stand and walk have been compromised and this limits him to the sedentary level of exertion. Further, the claimant has severe bilateral hand arthritis. ... However, there is no objectively valid reason for concluding that the claimant is incapable of performing sedentary lifting and carrying. The objective medical evidence is consistent with the ability to perform at least sedentary lifting and carrying with the left hand alone. The claimant is right handed and there is little question that his right hand functioning has been compromised. However, the claimant remains functional without assistan[ce] and is able to perform all activities of daily living. His is perhaps slower than usual. Thus, the extent of the alleged compromise of the claimant's manual dexterity is simply not supported by the claimant's activities of daily living. I again note that

11

clinical findings include normal grip strength, no muscle atrophy, and some dexterity.

Quoting Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783 (7th Cir. 2003), Mr. Kasch contends that the ALJ's credibility determination is "precisely the kind of conclusory determination SSR 96-7 prohibits"—it "turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order in order to come to a decision on the merits," and lacks "any explication that would allow this court to understand the weight given to the [claimant's] statements or the reasons for that consideration as required by SSR 96-7p." Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d at 787.

The absence of objective medical evidence supporting the severity of subjective complaints of pain is just one of many factors that the ALJ must considered in evaluating the credibility of the testimony. Scheck v. Barnhart, 357 F.3d 697, 703 (7th Cir. 2004); Zurawski v. Halter, 245 881, 887 (7th Cir. 2001).

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects on the claimant. [H]e must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for

12

>the relief of pain, functional restrictions, and the claimant's daily activities.

Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994). The ALJ must consider the entire case record, and must "articulate at some minimal level his analysis of the evidence." Zurawski v. Halter, 245 F.3d at 888 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "It is not sufficient for the adjudicator to make a single, conclusory statement that the individual's allegations have been considered…[nor is it] enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms." Zurawski v. Halter, 245 F.3d at 887.

The ALJ found that Mr. Kasch's testimony about the limitations his impairments and related pain place on his functional abilities was inconsistent with the objective medical evidence and with his own testimony regarding his daily activities. But the evidence the ALJ relies on doesn't necessarily support his conclusions, and there is no indication he considered other relevant evidence in the record regarding precipitation and aggravating factors, dosage and effectiveness of any pain medications, and other treatment for the relief of pain.

The assertion that the objective medical evidence did not support Mr. Kasch's subjective complaints is incorrect. Mr. Kasch's testimony was consistent with the evaluations and course of treatment prescribed by his treating physician, Dr. Aroutiounova, and, as previously discussed, the ALJ hasn't adequately identified his reasons for rejecting Dr. Aroutiounova's opinions.

13

The ALJ's reliance on Dr. Budzenski's clinical finding of "normal grip strength, no muscle atrophy, and some dexterity" as medial evidence of a material inconsistency is misplaced. That finding was made in November 2002, and the ALJ found that Dr. Budzenski's assessment was not fully probative because he did not have an opportunity to review the most recently submitted medical evidence. Any probative value Dr. Budzenski's clinical findings may have had would have been limited, but the ALJ didn't identify those limitations, indicate what weight he actually gave Dr. Budzenski's statements, or state his reasons for rejecting some, but not all, of Dr. Budzenski's statements.

The ALJ considered Mr. Kasch's daily activities in determining credibility and found that those activities evidenced an ability to grasp with both hands, push, pull, and engage in fine manipulation, and showed that his manual dexterity was not as compromised as he alleged. He thus concluded that "there [was] no objectively valid reason for concluding that the claimant [was] incapable of performing sedentary lifting or carrying." Mr. Kasch's daily activities were fairly limited and not of a sort that necessarily undermined or contradicted his claim of disabling pain. The ALJ did not question the severity of Mr. Kasch's back and right knee impairments, or consider the impact those impairments would have on Mr. Kasch's ability to perform sedentary lifting and carrying. He focused instead on Mr. Kasch's testimony that he could lift ten pounds and his belief that he could take care of himself if he had to, while ignoring the specific testimony that qualified those statements.

The ALJ cannot simply recite the factors outlined in Social Security Ruling 96-7p in his decision and make conclusory statements about the claimant's credibility. Arnold v. Barnhart, 473 F.3d 816, 822 (7th Cir.2007): Zurawski v. Halter, 245 F.3d at 887; Social Security Ruling 96-7p. He must apply the factors to the evidence and build an "accurate and logical bridge from the evidence to his conclusions." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002). That bridge is missing in the ALJ's opinion.

## Conclusion

Following consideration of the evidence that supports, and the evidence that detracts from, the Commissioner's decision, the ALJ's analysis of that evidence and his discussion of the issues cannot be deemed sufficient. The ALJ isn't required to discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), but he may not simply ignore testimony that is contrary to his decision. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). His decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). The ALJ's decision in Mr. Kasch's case does not do so.

Accordingly, the final decision of the Secretary of Health and Human Services is REVERSED and the matter REMANDED for a rehearing.

SO ORDERED.

ENTERED:   March 26, 2007

                                    /s/ Robert L. Miller, Jr.
                                Chief Judge
                                United States District Court